## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LISA DIETER**<br>286 Confer Lane<br>Muncy, PA 17756<br><br>v.<br><br>**FRISKNEY EQUIPMENT, INC.**<br>101 Woodhull Drive<br>Angola, IN 46703<br><br>*And*<br><br>**HYSTER-YALE MATERIALS HANDLING, INC.**<br>5875 Landerbrook Drive, Suite 300<br>Cleveland, OH 44124 | **Case No.** 2:23-cv-1727<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Lisa Dieter, by and through her counsel, hereby states the following Complaint in Civil Action against the above-captioned Defendants and, in support thereof, avers as follows:

## PARTIES

1. Plaintiff, Lisa Dieter, is an adult individual residing in the Commonwealth of Pennsylvania at the above-captioned address.

2. Defendant, Friskney Equipment, Inc., is a business entity organized and existing under the laws of the State of Indiana with a place of business at the above captioned address.

3. Defendant, Hyster-Yale Materials Handling, Inc., is a business entity organized and existing under the laws of the State of Delaware with a place of business at the above captioned address.

4. At all times, Defendants were acting by and through their employees, servants, and/or agents, acting within the course and scope of their employment, service and/or agency.

## JURISDICTION & VENUE

5. Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. §1332.

6. Defendants are foreign corporations.

7. At all times, Defendants purposely established significant contacts in Pennsylvania, have carried out, and continue to carry out, substantial, continuous and systematic business activities in Pennsylvania and this judicial district.

8. The amount in controversy substantially exceeds, exclusive of interest and costs, $75,000.

9. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) and (3).

## FACTUAL ALLEGATIONS

10. Hyster-Yale is a global, full-line lift-truck manufacturer.

11. Hyster-Yale designs and manufacturers lift-trucks under both the "Hyster" and "Yale" product lines.

12. One of the Hyster models that Hyster-Yale designs and manufactures is the E50XN lift-truck.

13. The Hyster E50XN is an electric lift-truck advertised as having "advanced dependability" and "reduced maintenance costs."

14. On or about October 23, 2014, Hyster-Yale manufactured the subject E50XN lift-truck, serial number A268N14434M.

15. The subject lift-truck was designed and manufactured with a safety switch ("dead man switch") in the operator's seat that shuts off power to the lift truck and prevents the machine from operating when the operator is not sitting on the seat.

16. A dead man switch is a safety feature that prevents operation of the lift-truck when the operator is not in full control of the machine.

17. Friskney is a lift-truck distributor, selling and renting lift-trucks throughout the United States.

18. Friskney advertises that its customers will "sleep well" as Friskney performs a 35-point service by a "trained forklift specialist" to each lift-truck that it sells or rents.

19. On or about October 12, 2021, Friskney sold the subject lift-truck to Plaintiff's employer, Central Transport.

20. Before the subject lift-truck was shipped to Central Transport, Friskney performed an inspection of the subject lift-truck, including the lift-truck's safety switch.

21. On November 29, 2021, Mrs. Dieter was working in the course and scope of her employment as a truck driver for Central Transport.

22. That evening, at approximately 10:00 pm, Mrs. Dieter arrived at Central Transport's terminal in Gibsonia, Pennsylvania.

23. Mrs. Dieter backed her truck up to the terminal's loading dock, exited the truck, opened the truck's trailer, and proceeded to the subject lift-truck, which was parked on the dock.

24. Mrs. Dieter started the subject lift-truck and entered the trailer to retrieve her freight.

25. Mrs. Dieter picked up the freight with the lift-truck's forks and backed out of the trailer and onto the dock.

26. When she drove onto the dock, Mrs. Dieter stopped the lift-truck to scan the freight to track where the freight was to be shipped.

27. Mrs. Dieter stood up out of the operator's seat, leaned forward, and put her arm through the subject lift-truck's mast to scan the freight.

28. Suddenly and without warning, the subject lift-truck's mast came down onto her right arm.

29. Mrs. Dieter's right arm was crushed between the top of the mast and the bracket of the mast located in front of the steering column.

30. Mrs. Dieter sustained catastrophic and permanent injuries because the subject lift-truck's dead man switch was in a defective condition and/or was not operating as intended.

31. Because the subject lift-truck's dead man switch was in a defective condition and/or was not operating as intended, power to the lift-truck's controls was not shut off when Mrs. Dieter sat up off the operator's seat.

32. Because power to the subject lift-truck's controls was not shut off due to the defective nature of the dead man switch, the lift-truck's mast was permitted to come down onto Mrs. Dieter's right arm, crushing it.

33. Hyster-Yale designed and manufactured the subject lift-truck.

34. Hyster-Yale assembled and sold the subject lift-truck.

35. Hyser-Yale designed, manufactured, assembled and sold the subject lift-truck with a defective dead man switch on the operator's seat.

36. Friskney distributed and/or sold the subject lift-tuck to Central Transport, Mrs. Dieter's employer.

37. Friskney performed an inspection of the subject lift-truck, including all safety switches on the lift-truck, before it sold the lift-truck to Central Transport.

38. Friskney sold the subject lift-truck to Central Transport with a defective and/or inoperable dead man switch.

39. By virtue of its design, manufacture, assembly, installation, maintenance, service, repair and/or inspection, the subject lift-truck's dead man switch was incapable of operating as intended.

40. A business owner must not create an unsafe condition in products that it designs, manufactures, sells and/or distributes.

41. A business owner must not permit an unsafe condition to continue to exist in products that it designs, manufactures, sells and/or distributes.

42. A business owner must take steps to prevent unsafe conditions from developing in products that it designs, manufactures, sells and/or distributes.

43. A business owner must not to needlessly endanger end user of products that it designs, manufactures, sells and/or distributes.

44. A business owner must correct any unsafe conditions it knows or should know in products that it designs, manufactures, sells and/or distributes.

45. A business owner must perform inspections of products that it designs, manufactures, sells and/or distributes to discover unsafe conditions.

46. A business owner must properly train its workers and/or employees to ensure that products that it designs, manufactures, sells and/or distributes operate as intended.

47. A business owner must reasonably undertake safety responsibilities that it assumes.

48. As a direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness and other liability and strict liability producing conduct, and the defective nature of the subject lift-truck, Mrs. Dieter sustained catastrophic, severe and

permanently disabling injuries, including but not limited to a (i) high grade rupture/tear of the right biceps and brachialis tendon; (ii) distal humorous fracture; (iii) radial and median nerve damage; (iv) ruptured and torn tendons, ligaments and nerves in the right arm; and (v) lacerations to the right arm and elbow.

49. As a direct result of Defendants' carelessness, negligence, gross negligence, recklessness and other liability and strict liability producing conduct, Mrs. Dieter required, and will continue to require, surgeries, medicines, medical care and treatment, and was caused to incur, and will continue to be caused to incur, medical expenses for care and treatment.

50. As a direct result of Defendants' carelessness, negligence, gross negligence, recklessness and other liability and strict liability producing conduct, Mrs. Dieter suffered, and will continue to suffer, agonizing aches, pain and mental anguish. Mrs. Dieter has sustained a loss of the enjoyment of life, life's pleasures and life's hedonic pleasures past, present and future.

51. As a direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness and/or any other liability and strict liability producing conduct, Mrs. Dieter has been prevented, and will be prevented in the future, from performing her usual duties, activities, occupations and/or avocations, and has suffered a loss of earnings and a loss of earning capacity.

52. Mrs. Dieter's injuries were the direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness and/or any other liability and strict liability producing conduct, and in no way were contributed to by Mrs. Dieter.

53. Defendants are jointly and severally liable for Mrs. Dieter's injuries and damages.

## COUNT I – NEGLIGENCE
## LISA DIETER V. DEFENDANTS

54. All preceding paragraphs are incorporated as though fully set forth at length herein.

55. Hyster-Yale and Friskney designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce the subject lift-truck, which injured Mrs. Dieter.

56. Hyster-Yale and Friskney, by and through their agents, officers and/or employees, were negligent both generally and in the following specific respects:

    a. failing to design and/or utilize proper designs for the manufacture, assembly, sale, distribution, inspection and/or maintenance of the lift-truck to minimize the risk of injury or death to the end users;

    b. failing to properly assemble and/or inspect the subject lift-truck;

    c. assembling, distributing and/or selling the subject lift-truck so that the lift-truck's dead man switch was inoperable;

    d. failing to direct and require manufacturers/assemblers/distributors to adhere to applicable safety regulations and standards;

    e. designing, assembling, manufacturing, selling, supplying and/or distributing a product in a defective condition;

    f. designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous to the end user;

    g. designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not reasonably fit, suitable and/or safe for its intended and represented purpose;

    h. designing, assembling, manufacturing, selling, supplying and/or distributing a product which lacked all necessary safety features to protect end users of the product;

    i. designing, assembling, manufacturing, selling, supplying and/or distributing a product which could be designed more safely;

    j. designing, assembling, manufacturing, selling, supplying and/or distributing a product without appropriate quality control checks;

    k. failing to provide warnings, decals and/or information of any kind to the ultimate users of the lift-truck about the significant risks

        associated with its use if the product's dead man switch is not working as intended;

l. failing to recall the subject lift-truck if and when it was determined that the dead man switch did not operate as intended;

m. failing to investigate, retain and/or analyze prior accident information regarding malfunctioning dead man switches;

n. failing to investigate, retain and/or analyze prior accident information in order to warn and/or notify ultimate users of product defects and dangers;

o. failing to take feasible and reasonable precautions that would have prevented Mrs. Dieter's serious and permanent injuries; and

p. violating the statutes, ordinances, codes and/or industry standards as to the maintenance, care, control, design, repair and/or use of the subject lift-truck require.

q. liability for acts of a subsidiary by virtue of the subsidiary acting as mere instrumentality or alter ego of its parent;

r. liability for acts of a subsidiary by virtue of a parent's control and domination of the subsidiary and/or the subsidiary's control and domination of the parent; and

s. vicarious liability for acts of a subsidiary and/or acts of a parent by virtue of indicia of apparent authority with respect to manufacturing, designing, distributing and sale of the forklift.

57. By reason of the Defendants' carelessness, negligence, gross negligence and recklessness, Mrs. Dieter sustained serious and permanent disabling personal injuries, including those set forth above.

58. By conducting themselves as set forth above, Defendants' acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of Mrs. Dieter's catastrophic and permanent injuries.

**WHEREFORE**, Plaintiff, Lisa Dieter, requests that the Court enter judgment against Defendants in an amount that will fully and fairly compensate her for her damages and for costs as allowed by law.

## COUNT II – STRICT LIABILITY
## LISA DIETER V. DEFENDANTS

59. All preceding paragraphs are incorporated as though fully set forth at length herein.

60. Defendants are in the regular business of designing, assembling, manufacturing, distributing, selling and/or supplying industrial machinery such as the subject lift-truck involved in Mrs. Dieter's accident.

61. Defendants, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, is strictly liable under § 402A of the Restatement (Second) of Torts because:

   a. Defendants are engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing and/or placing into the stream of commerce industrial equipment, like lift-trucks, including the product which injured Mrs. Dieter;

   b. The product involved in the subject incident was marketed and placed in the general stream of commerce by Defendants;

   c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce; and

   d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above.

62. In addition, the product was in a defective condition as: (i) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (ii) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

63. The defective condition of the product caused Mrs. Dieter's injuries.

64. Defendants are strictly liable to Mrs. Dieter.

**WHEREFORE**, Plaintiff, Lisa Dieter, requests that the Court enter judgment against Defendants in an amount that will fully and fairly compensate her for her damages and for costs as allowed by law.

DATED: October 3, 2023

Respectfully submitted,

*/s/ Larry Bendesky*
Larry Bendesky
Adam J. Pantano
Scott A. Fellmeth
Saltz Mongeluzzi Bendesky
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 496-8282
Email: lbendesky@smbb.com
Email: apantano@smbb.com
Email: sfellmeth@smbb.com